## SUPREME COURT.

### KNEEDLER agt. STERNBERGH.

The plaintiff may demur to an answer containing new matter in defence, although not constituting a counter claim. (See 9 *How. Pr. R.* 481, 488, *adverse.*)
A plaintiff cannot demur to a mere denial of the complaint.
A *counter claim*, within the Code, must be a cause of action on the part of the defendant; and sometimes what, in modern times, has been considered a right of recoupment is a counter claim, and sometimes it is not.

Kneedler agt. Sternberg.

In case of recoupment brought in as a partial defence, and not constituting an independent cause of action or counter claim, can the defendant now give notice?

The purchaser of a note over due takes it subject to all equities; and a set-off against a former holder may, it seems, to the amount of the note, be considered a counter claim against the plaintiff.

Every answer should be an answer to the whole of the complaint or count to which it is pleaded; and an answer to one count of a complaint should, of course, specify to which count it is intended to apply.

A partial defence, or matter in mitigation, cannot be pleaded alone under the Code. Perhaps matter in mitigation in libel or slander, (with justification,) and set-off, are exceptions. Matters constituting a partial defence, and for the purpose of mitigation, where they cannot be pleaded, it seems, may be given in evidence without being pleaded.

When a vendee would rescind the contract of sale *in toto*, for fraud, he should return or reconvey the property, or offer to do so; and, unless he do so, if the vendor has completely executed the contract, no fraud on his part will be a complete bar in a suit for the price, unless the property sold is absolutely worthless.

*Saratoga Special Term, June,* 1854.—This was a demurrer to an answer.

The first count of the complaint was on a note alleged to have been given on the 20th of July, 1848, by the defendant, by which, for value received of one J. C. Offerman, the defendant promised to pay, 3 *mos.* after date, to his own order, $100; and states that defendant, at the same time and place, transferred it to J. C. O., and J. C. O. on the same day transferred it to the plaintiff, who is now the owner, and that it had not been paid, but had been protested for nonpayment, &c.

The second count alleged, that on the 20th day of July, 1848, the defendant made his other promissory note, by which, for value received, he promised to pay, 3 *mos.* after date, to his own order, $100; and that the defendant, for value received, endorsed and transferred it to the plaintiff, and that it had not been paid, but had also been protested for nonpayment.

The defendant answered, denying that "he ever endorsed or transferred to the plaintiff the note mentioned in said complaint."

And he further answered, that on the 20th of July, 1848, J. C. O., at Philadelphia, represented himself to be the owner,

**and** to have the legal right to a certain portion of certain warrants of escheat, issued by the Maryland Land Office, and that by virtue thereof he was the owner of large and valuable tracts of land belonging to the estate of one J. S., deceased; and which estate J. C. O. then represented had been escheated, and urged defendant to buy of him his said interest; and represented to the defendant that thereby defendant would become the owner of large and valuable tracts of land situated in Maryland; and that, firmly believing the same, and relying upon those representations, he purchased O.'s interest therein for the sum of $750, for which he gave J. C. O. his notes, and J. C. O. gave him a conveyance in writing of his interest in said warrants; and the note mentioned in the complaint was one of the notes so made and delivered to J. C. O. That these representations were false and fraudulent, and made with intent to cheat and defraud the defendant. That the consideration of the note had entirely failed, and it was transferred to the plaintiff after it became due, and after full notice to plaintiff of the fraud.

To these answers the plaintiff demurred, on the ground that they were insufficient, and the facts set up constituted no defence.

A. POND, *for plaintiff*.

J. B. McKEAN, *for defendant*.

HAND, Justice.    Defences and counter claims must refer to the causes of action which they are intended to answer, in such manner that they may be intelligibly distinguished. (*Code*, § 150.) The complaint contains two counts, each upon a note; and neither of the answers distinguishes the counts or note to which it is intended to apply; but refers to the "note mentioned in the complaint." The first, it is true, denies the defendant ever endorsed or transferred the note mentioned in the complaint to the plaintiff: and probably this defence was intended to apply to the note alleged in the complaint to have been received by the plaintiff from the defendant. And the other answer gives the history of the origin and consideration of certain

notes, which defendant gave to Offerman, and then states that the "note mentioned in the complaint" is one of them. But a designation or identity, resting upon mere probabilities, or mere presumption, is too vague and equivocal to be good pleading. And a plea should answer the whole declaration or count to which it is pleaded. (Root agt. Woodruff, 6 *Hill*, 418; 1 *Saund. R.* 28, *a. n.* 3.) And it is bad for uncertainty, if it does not appear what part of the complaint it is intended to answer.

But the second answer is otherwise defective. If the defendant intended to rescind the contract *in toto*, he should have reconveyed, or have offered to do so. (Wheaton agt. Baker, 14 *Barb.* 594; *Chitt. on Cont.* 636; Matteawan Company agt. Bentley, 13 *Barb.* 645.) And where the contract of sale has been fully executed by the vendor, no fraud on his part in making it can operate as a complete bar to an action for the price, unless the thing sold was absolutely worthless, or the vendee has returned or reconveyed the property, or has offered to do so. (Van Epps agt. Harrison, 5 *Hill*, 63; Burton agt. Stewart, 3 *Wend.* 236.)

The defendant alleges that the representations were false and fraudulent, and were made to cheat and defraud the defendant; and that the consideration of the note mentioned in the complaint has entirely failed; but it is not stated what part of the representations were false, or wherein; nor how the consideration has entirely failed; nor does it appear that nothing whatever passed by the conveyance of O. to the defendant. If that was not the case, the consideration has not entirely failed. This is not a suit between the original contracting parties; but as the answer states that the note was transferred after it became due, the plaintiff took it subject to all objections in respect of want of consideration or illegality, and all other objections and equities affecting the instrument itself. (*Chitt. on Bills,* 218; 3 *Kent*, 91; *Code,* § 112.) And even in case of set-off, although the "counter claim" must be one "existing in favor of the defendant, and *against the plaintiff*," (*Code,* § 150,) yet, where a note, transferred over due, is in

Kneedler agt. Sternbergh.

suit, *quoad* that, the demand that should be set off may be considered as "against the plaintiff." (See § 12.)

This answer does not show that the failure or want of consideration is total; and in such cases the new rules of pleading make the practice somewhat doubtful. Formerly, as a general rule, matter constituting a partial defence could not be pleaded, but might be given in evidence. (Barber agt. Ross, 5 *Hill*, 80; Herkimer M. & H. Company agt. Small, 21 *Wend.* 277; *Co. Litt.* 283 *a;* Wilmarth agt. Babcock, 2 *Hill*, 194; Boyd agt. Weeks, 5 *id.* 394.) But this court, under its former organization, came to the conclusion that notice must be given in case of *recoupment.* (Mayor, &c., of Albany agt. Trowbridge, 5 *Hill*, 71; Van Epps agt. Harrison, *supra.*) Especially unless it went to the whole consideration. And yet it could not have been pleaded. (Nichols agt. Dusenbury, 2 *Comst.* 283; M'Cullough agt. Cox, 6 *Barb.* 386.) The Code is silent as to giving notice with a plea. But under the former system notice of recoupment, if it were necessary, was not in pursuance of any statute. (See Basten agt. Butter, 7 *East*, 478; 5 *Hill*, 79.) In this state, by statute, notice could have been given with the general issue, &c., "of any matters which, if pleaded, would be a *bar to such action*," and evidence thereof given on the trial. (2 *R. S.* 353, § 10.) Nothing was said about notice of a partial defence. Perhaps a plea of set-off need not have covered the whole declaration, or the whole of any count, (2 *R. S.* 354, §§ 19, 21,) as whatever was established as set-off was to be deducted from the demand of the plaintiffs. (*Id.*) It seems, by the English practice, if the proof falls short of meeting the demand established by the plaintiff, the defendant cannot have a verdict on his plea of set-off, unless that plea, with other pleas, and the proofs under them, cover the whole cause of action. (Tuck agt. Tuck, 5 *M. & W.* 109; Kilner agt. Bailey, *id.* 382; Nichols agt. Tuck, 16 *Eng. L. & E. R.* 104; 1 *Saund. R.* 28, *n. d.*)

The meaning of the word, "counter-claim," has already been a subject of some discussion. (*Whittaker's Pr.* 506–7.) Not being a technical word, nor found in our dictionaries, its defi-

nition, as used in §§ 149 and 150 of the Code, is not perfectly clear. It does not, however, owe its paternity to the Code. Although seldom used, it has been, occasionally, by the profession. (By WILLIAMS and PATTERSON, JJ., in Mee agt. Tomlinson, 4 *Ad. & E.* 262; WILDE, C. J., in Collander agt. Howard, 10 *C. B.* 302; *Sedg. on Dam. ch.* 17.) Like some other rather inelegant compounds, as " counter-demand," (6 *Ves.* 141,) " counter-letter," (11 *Pet. R.* 351,) " counter-paper," and " counter-security," (*Chitt. Bills*, 711,) " counter-action," (5 *Exch. R.* 356,) it may sometimes be met with in our law books; but most generally, before the Code, I believe it had reference to a set-off. The word " claim " has been considered a " word of art;" and long since was defined by c. j. DYER to be " a challenge, by a man, of the property or ownership of a thing which he has not in possession, but which is wrongfully detained from him." (*Plowd.* 359.) And its popular signification and use would hardly include *recoupment* in every case. Recoupment is not always a subsisting *claim.* Suppose a disseizor erects permanent improvements, when called upon to respond in damages, he may *recoupe* what he has so expended. (Coulter's case, 5 *Co.* 131; 8 *Vin.* 556; *Sedg. on Dam. ch.* 17; 2 *R. S.* 311.) And yet he has no cause of action therefor. Its early use was in this sense; but I do not understand this would be a counter-claim within the Code. Indeed, the examples of recoupment given by Viner are under the head of " Discount." A counter claim must be a cause of action, (*Code,* § 150,) a " cross demand." The defendant can have no " claim," properly speaking, arising solely out of the plaintiff's cause of action. Where the defence rests in the mere right of deduction or diminution of the plaintiff's damages, the law before the Code gave and enforced that right. The claim of the plaintiff may now be met by independent causes of action arising upon the same or another contract; but that is quite another thing. In this case, if the original contract of purchase had been between these parties, and the defendant had set up a warranty by the plaintiff, and claimed that his damages, by a breach thereof, should be allowed, that would have been a counter claim. But where a

vendee, who has paid nothing, in an action for the purchase money, seeks merely to reduce the amount of the recovery by showing a partial failure of the consideration, or even defeat a recovery by showing a total failure, it is not easy to see how such a defence can be deemed to be a cause of action on his part. Besides, as to a partial failure, with all respect for those who may think differently—I find no rule in the Code by which either a partial defence, or matter in mitigation, can be pleaded alone any more now than formerly, especially where the action or defence does not belong to equitable jurisdiction. Perhaps mitigating circumstances in an action for a libel or slander, (with justification,) and set-off, are, in a degree, exceptions. But the same reason for requiring the defendant, in his plea, to meet the whole of the declaration, or of a count, by a denial; or matter in avoidance; or by opposing claims; or by confession; or by some or all of these defences combined, still exist. The Code only abolishes the "forms" of pleading, not principles. (§ 140.) It seems to me that the old rule, that such matters may be given in evidence, still prevails.

The second answer in this case, as we have seen, even if it had identified the note or count to which it was intended to apply, does not contain enough to constitute a complete bar; nor does it set up a counter claim, and is, therefore, insufficient as an answer to either count.

But the defendant insists that, if this is not a counter claim, the plaintiff cannot demur.

I had supposed this question was at rest in this district; but the objection has been taken in two or three causes argued this term, and the point urged with some zeal, upon the strength of recent decisions claimed to be adverse to the right to demur in such cases. The cases which are said to favor the objections are, Loomis agt. Dorsheimer, (8 *How. Pr. R.* 9,) Silliman agt. Eddy, (*id.* 122,) People agt. Banker, (*id.* 260,) Simpson agt. Loft, (*id.* 234,) Roosa agt. Saugerties and W. Turn. Co., (*id.* 237,) People agt. Banker, (*id.* 258,) Thomas agt. Harrop, (7 *id.* 57,) and Quin agt. Chambers, (1 *Duer*, 673.) On the other hand may be cited Hopkins agt. Everett, (6 *How. Pr. R.*

159,) Seward agt. Miller, (*id.* 312,) Roscoe agt. Morrison, (7 *id.* 121,) Noxon agt. Bentley, (*id.* 316,) Bogardus agt. Parker, (*id.* 303,) Salinger agt. Lusk, (*id.* 430,) and Wisner agt. Teed, (9 *id.* 43,) and Arthur agt. Brooks, (14 *Barb.* 533; and see 1 *Whittaker's Pr.* 527.) Loomis agt. Dorsheimer, Thomas agt. Harrop, Salinger agt. Lusk, Hopkins agt. Everett, and Seward agt. Miller, arose upon mere denials in an answer. I do not see how a demurrer can ever be necessary or proper to a mere denial of the complaint. Indeed, a general denial of the complaint is so far like the general issue, that it is a traverse of all the material allegations of the complaint.

Silliman agt. Eddy, Putnam agt. De Forest, and Simpson agt. Loft, were on motions to strike out a reply. In the People agt. Banker, which was decided by the same judge who decided Roosa agt. Saugerties, &c., Turn. Co., though it does not appear when the pleadings were put in, the court gave judgment for the plaintiff on a demurrer to an answer, that the defendant, in a suit for the same demand before a justice, had tendered the sum due, and had also brought it into that court and deposited it with the justice. The answer contained no counter claim. Roosa agt. Saugerties and W. Turn. Co., and Quin agt. Chambers, were both motions; one to strike out part of the answer, after judgment, for the defendant on a demurrer thereto; and the other, for judgment on a demurrer to an answer, as frivolous. The court in both cases, however, expressed an opinion that there could be no demurrer to an answer, unless it contained a counter claim; and in the former case the judge thought both the demurrer and the judgment thereon nullities. This would certainly be going very far with a judgment of a court of a general jurisdiction. I doubt whether a judgment of this court can be void, rendered upon any issue presented by the parties, in a cause of the subject matter of which it has jurisdiction. Indeed, if the parties prefer to plead on until they narrow the controversy to a single point, or by a demurrer refer the law arising upon the fact to the judgment of the court, I see no objection. (See *Van Santvoord's Pl.* 338.)

The answer may contain a denial, or new matter constituting

Kneedler agt. Sternbergh.

a defence, or a counter claim. (§ 149.) Before the amendments of 1852, by § 154, the plaintiff must have replied or demurred to the new matter pleaded as constituting a defence merely; and that section was not repealed in 1852, only so far as repugnant to the amendments of that year. It has been a question whether § 153 is confined to an answer containing a counter claim; or extends, in part, to all answers containing new matter. The section, as punctuated, is open to some criticism. But if it is confined to counter claims, it does not prohibit demurrers to other answers. By the last clause of § 168, new matter in the answer, not relating to a counter claim, is to be deemed "controverted" by the plaintiff "as upon a direct denial or avoidance, as the case may require." That is, if the plaintiff is content, such new matter in the answer is traversed; is put in issue by a denial; and, supposing the answer to be true, the plaintiff also has the privilege of showing by evidence new matter in avoidance thereof, without putting such matter in avoidance upon the record.

"Avoidance" has another technical meaning; but every lawyer knows the meaning of the words "denial" and "avoidance," when used in reference to pleading. And here they are only predicable of issues of fact; and such are the issues formed by this clause of § 168, which are to be tried by a jury. (BOSWORTH, J., 1 Duer, 674.) But suppose this new matter in the answer is insufficient in law as a defence; can it be possible that our legislators intended to force such an issue upon the plaintiff, and compel him to try it by a jury? I think they have said no such thing; and if they have not, courts should not be so unreasonable. There are a great many cases where the plaintiff cannot move to strike out such matter; and besides, that is a very poor way to try grave questions of the sufficiency of pleading. A demurrer neither denies nor avoids the pleading of an adversary; but refuses to do so, because it contains nothing that need be denied or avoided; and is the most convenient and safe, and the only lawyer-like mode of testing the sufficiency of a pleading. This clause of § 168 may dispense with a reply, and perhaps render it improper;

and of course the defendant cannot move for judgment for want of a reply under § 154; but, after a careful consideration, I do not see how it affects the right to demur; especially so long as it does not profess to repeal § 154 in that respect. This construction may also be considered as resting upon authority in this district. The case of Smith agt. the Franklin Fire Insurance Company was an appeal from the decision of Mr. Justice C. L. ALLEN, sustaining such a demurrer; and was fully argued upon that point in January last before the four judges of the district, and the decision sustained, at our recent May term, by three of the judges to one dissenting. And we have given judgment in many causes upon a similar demurrer. I should have contented myself with a reference to that decision, but for a few cases recently decided, which have been pressed upon my consideration this term.

The demurrer is sustained, with leave to the plaintiff to amend upon payment of costs.